James S. Jardine (1647)
jjardine@rqn.com
Arthur B. Berger (6490)
aberger@rqn.com
Samuel C. Straight (7638)
sstraight@rqn.com
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
P. O. Box 45385
Salt Lake City, Utah 84145-0385
Telephone: (801) 532-1500
Facsimile: (801) 532-7543

L. Scott Oliver (*pro hac vice*)
scott.oliver@klgates.com
Jackson Ho (*pro hac vice*)
jackson.ho@klgates.com
Ranjini Acharya (*pro hac vice*)
ranjini.acharya@klgates.com
K&L GATES LLP
630 Hansen Way
Palo Alto, California 94304
Telephone: (650) 798-6700
Facsimile: (650) 798-6701

Attorneys for Defendant and Counterclaimant
XYMOGEN, INC.

**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| THORNE RESEARCH, INC. and SOFTGEL FORMULATORS, INC., <br><br> Plaintiffs, <br><br> vs. <br><br> XYMOGEN, Inc. <br><br> Defendant. | Case No. 2:13-CV-784 TS <br><br> Judge Ted Stewart <br><br> Magistrate Judge Paul M. Warner <br><br> **REPLY MEMORANDUM IN SUPPORT OF XYMOGEN'S MOTION FOR LEAVE TO AMEND OR SUPPLEMENT INVALIDITY CONTENTIONS** |

## I.  INTRODUCTION

Plaintiffs' argument, and refusal to stipulate to XYMOGEN's request, ultimately collapses to nothing more than a hope that evidence of patent invalidity not come before the Court at summary judgment.

XYMOGEN was diligent in discovery, and the Court's *Markman* order--which did not adopt either of XYMOGEN's constructions, but confirmed the viability of XYMOGEN's theories--necessitated changes to XYMOGEN's invalidity contentions. Plaintiffs are correct that the underlying evidence, primarily deposition testimony, was elicited months ago--of course it was, because fact discovery closed months before the *Markman* hearing. But the ***significance*** of that evidence could only become clear after the Court's claim construction.

Moreover, the suggestion that XYMOGEN somehow deliberately delayed in bringing its instant motion, is simply wrong. Plaintiffs have been on notice of XYMOGEN's potential theories of invalidity since March 2015, when XYMOGEN moved to amend the deadlines for dipositive motions and claim construction briefing. However, that motion remained pending, even when the Court issued the *Markman* order. The suggestion that XYMOGEN deliberately delayed makes no sense, and should be rejected. Once the *Markman* order issued, XYMOGEN sought a stipulation that both parties amend their contentions based on the Order. Plaintiffs refused; XYMOGEN then filed this motion two weeks later.

XYMOGEN meets both the "good cause" and "excusable neglect" standards that support granting leave to amend its invalidity contentions, and Plaintiffs suffer no prejudice from the amendment. Rather, this amendment will streamline proceedings and promote judicial efficiency as the parties prepare for summary judgment briefing and trial. It makes no sense to

the permit parties to ambush one another at trial with infringement and invalidity arguments that have not been disclosed in their respective contentions. XYMOGEN's motion for leave to amend/supplement its invalidity contentions for U.S. Patent No. 8,491,888 ("the '888 patent") should therefore be granted.

## II.  ARGUMENT

### A.  XYMOGEN Has Demonstrated Diligence Sufficient to Establish Good Cause

XYMOGEN diligently pursued discovery to develop its theories of invalidity. Nothing in Plaintiffs' opposition proves otherwise.

Instead, what Plaintiffs argue is that XYMOGEN has "confused diligently pursuing *discovery* with diligently seeking *leave to amend*." (Dkt. 127 at 7) (emphasis in original). This, however, misapprehends the legal standard for establishing good cause sufficient to allow contentions to be amended. The first inquiry is whether there has been diligence in seeking *discovery*.[1] Thus, for example, in *Yodlee, Inc. v. CashEdge, Inc.*, the court declined to apply the holdings in *O2 Micro International Ltd. v. Monolithic Power Systems, Inc.*, 467 F.3d 1355 (Fed. Cir. 2006), noting "[t]he Federal Circuit did not address the issues facing the court on this motion: whether the party was *diligent in discovering the basis for amendment,* and whether lack of *such* diligence precludes a finding of good cause."  No. C05-01550 SI, 2007 WL 1454259, at *2-3 (N.D. Cal. May 17, 2007) (emphasis added). Similarly, in *The Bd. of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.,* the court noted that although the movant "was arguably not diligent in pursuing the amendment with this court, *it was diligent in notifying and seeking discovery from* [*non-movant*]… even though [movant] waited four

---

[1] Diligence in seeking leave to amend is a separate inquiry, addressed below. It cannot be conflated with the first step in the analysis, diligence in seeking discovery.

2

months before bringing the instant motion, the court places substance over form to hold that

[movant's] overall diligence was not insufficient." No. C 05-04158 MHP, 2008 WL 624771, at

*3 (N.D. Cal. Mar. 4, 2008) (emphasis added).  Thus, the relevant inquiry is whether

XYMOGEN was diligent in seeking discovery during the fact discovery period.  It was, and

Plaintiffs do not suggest, nor prove, otherwise.

XYMOGEN diligently pursued its case through discovery from November 2014 through

to the close of fact discovery in June 2015.  As outlined in XYMOGEN'S opening brief (Dkt.

123), new potential theories of invalidity only came to light during the depositions of Messrs.

Trevor Jones and Robin Koon on January 21 and February 12, 2015, respectively.  XYMOGEN

then sought to develop its theories of invalidity through additional depositions that were noticed

for March and April 2015. (*See* Dkt. 124, Declaration of Scott Oliver, at ¶ 3).

In March 2015, XYMOGEN also sought to amend the briefing scheduling on dispositive

motions in light of the new evidence obtained during the January and February depositions.  (*See*

Dkt. 40).[2]  Indeed, ***Plaintiffs concede that they have been on notice of XYMOGEN's theories***

***of invalidity since this time***, when XYMOGEN filed its motion to amend the scheduling order.

(*See* Dkt. 127 at 4-5).  Plaintiffs' opposition to the present motion, and their protestations that

---

[2] Plaintiffs attempt to argue that XYMOGEN knew of these theories of invalidity "long before" the depositions of Messrs. Jones and Koon took place.  (Dkt. 127 at 4-5).  However, as XYMOGEN has argued elsewhere, (s*ee* Dkt. 51), XYMOGEN raised questions of inventorship and the on-sale bar as standard defenses, as is done in nearly every patent case.  Until the depositions were taken, XYMOGEN did not have the clear and convincing evidence on which to base a summary judgment motion or a motion for an extension of time.
  Until it took those depositions it had no way to know whether it would eventually have such clear and convincing evidence. (Dkt. 51 at 1). The Koon and Jones depositions changed that calculus.  (*Id.* at 2).  It is simply not correct that XYMOGEN "was aware of the basis of its claims well before the depositions," as Plaintiffs suggest--and it bears noting that Plaintiffs' claim is mere attorney argument.  (Dkt. 127 at 5).

these are new theories of invalidity, are nonsensical.  *See IXYS Corp. v. Advanced Power Tech., Inc.,* 321 F. Supp. 2d 1133, 1153 n. 19 (N. D. Cal. 2004) (discussing prior art combinations that were missing from invalidity contentions, finding prior notice of the prior art to the plaintiff was sufficient: "[w]hile [defendant's] motion makes clear that it has not complied fully with the letter of the local rules, the court finds that [*plaintiff*] ***has long been on notice of these potential combination*** [*sic*]. In the interests of privileging substance over form, the court will proceed to address these most pertinent-and most well-known-of combinations.") (emphasis added.)

Plaintiffs also attempt to make much of the delay between the depositions, which took place in January and February 2015, and the filing of XYMOGEN's instant motion in December 2015.  (Dkt. 127 at 5).  XYMOGEN explained the reasons for the "delay" in its opening brief. (*See* Dkt. No. 123 at 7-9).  In short, XYMOGEN was diligent during this one year period:

First, after taking the Koon and Jones depositions, which dramatically changed the merits of XYMOGEN's invalidity theories (after the deadline for service of final invalidity contentions in November 2014 had long-since passed), XYMOGEN moved to amend the briefing schedule on claim construction and dispositive motions in March 2015.  (Dkt. 40).  There has never been a ruling on that motion, and it was presumably mooted by this Court's Memorandum Decision and Order on Plaintiffs' Motions for Clarification and Reconsideration (Dkt. 115).

Second, when the Court's construction of the term "non-crystalline" and "carrier oil" ***for the first time confirmed*** XYMOGEN's invalidity theories in October 2015 as clear and convincing, XYMOGEN sought a stipulation from Plaintiffs to the amendment of invalidity (and infringement) contentions.  Plaintiffs eventually refused, forcing XYMOGEN to bring this

4

motion.[3]  In short, there was no period of inactivity between January and December 2015;

XYMOGEN worked during that period to develop its theories of invalidity, and promptly moved

the Court for relief when it became apparent that there was no other means to amend its

invalidity contentions based on late-discovered evidence and on the Court's claim construction.

Indeed, as described below, permitting amended infringement and invalidity contentions now,

after the parties' theories have been informed by the *Markman* order, will promote judicial

economy by potentially disposing of this case at summary judgment.

Finally, Plaintiffs' argument that the one year period "in and of itself requires denial of

the motion" is simply wrong and finds no support in the case law.  (Dkt. 127 at 5).  Plaintiffs'

reliance on the ultimate holding in *O2 Micro*, without regard to the Federal Circuit's reasoning in

that case, misses the point.  In *O2 Micro,* the Federal Circuit recognized that "[it is] certainly

correct that refusing to allow any amendment to contentions based on new information

developed in discovery could be contrary to the spirit of the Federal Rules." 467 F.3d at 1366.

Moreover, longstanding Supreme Court authority holds that the Patent Local Rules supplement

the Civil Local Rules and the Federal Rules of Civil Procedure, and it would be "contrary to the

spirit of the Federal Rules of Civil Procedure, for decisions on the merits to be avoided on the

basis of [] mere technicalities."  *Foman v. Davis,* 371 U.S. 178, 181 (1962); *see also Conley v.*

_____

[3] As Plaintiffs acknowledge, XYMOGEN believed until as late as September 2015 that its initial invalidity contentions would serve as its final contentions, with the exception of the late-discovered on-sale bar violation.  (Dkt. 127 at 4, n.1).  XYMOGEN's other theories on best mode and inventorship, could not be confirmed until the Court's claim construction order issued in October 2015.  (*See* Dkt. 123 at 7-8).

 For example, as XYMOGEN will detail in amended invalidity contentions, the determination that "non-crystalline" means simply that there are no visible crystals at 640x magnification, proves that the patentees were not the first inventors of a non-crystalline CoQ10 formulation. Similarly, the best mode defense flows directly from the Court's construction of "non-crystalline."

*Gibson*, 355 U.S. 41, 48 (1957) ("The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome, and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits.").

District courts have thus routinely adopted a flexible approach in assessing delay between the discovery of relevant evidence, and the seeking of leave to amend contentions, and have recognized that the grant of leave is well within the court's discretion. *See, e.g., United Therapeutics Corp. v. Sandoz, Inc.*, No. CIV.A. 12-1617 PGS, 2013 WL 7902649, at *5-*6 (D.N.J. Aug. 23, 2013) (granting leave to amend invalidity contentions, the court holding that the timing of bringing the motion to amend was "not offensive, given the host of considerations that re-shaping an invalidity case might invoke"); *Yodlee, Inc.* 2007 WL 1454259, at *3 (granting leave to amend and noting that the *O2 Micro* decision "does not compel an opposite result. The Federal Circuit merely held that the district court did not abuse its discretion by disallowing amendments brought after a three-month delay. This does not require this court to disallow the instant amendments since allowing the amendments is well within this court's discretion."). In light of XYMOGEN's diligence in preparing its case fully on the merits, and the necessary shifts in its invalidity theories following the *Markman* order, there is good cause to allow the amendment of XYMOGEN's invalidity contentions.

### B. XYMOGEN Has Met the "Excusable Neglect" Standard

XYMOGEN has also met the "excusable neglect" standard. The determination of "excusable neglect" requires the analysis of all pertinent circumstances, including the danger of prejudice to the non-movant, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of

the movant, and whether the movant acted in good faith. *Payne v. C.R. Bard, Inc.,* No. 14–

12603, 2015 WL 1435314, at *3 (11th Cir. Mar. 31, 2015) (citing *Advanced Estimating Sys., Inc.*

*v. Riney,* 77 F.3d 1322, 1325 (11th Cir. 1996)); *see also Johnson v. City of Murray*, 2:10-cv-

01130-TS-EJF, 2012 WL 5194025, at *2 (D. Utah Oct. 19, 2012). The "excusable neglect"

standard found in Rule 6(b)(1)(B) must take into account all relevant circumstances surrounding

the party's omission. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship,* 507 U.S. 380, 395

(1993). A determination of 'excusable neglect' is thus a "somewhat 'elastic concept' and is not

limited strictly to omissions caused by circumstances beyond the control of the movant."

*Pioneer,* 507 U.S. at 392. Moreover, under Rule 6(b), the district court "enjoys broad discretion

to grant or deny an extension, and the excusable neglect standard is intended and has proven to

be quite elastic in its application." *Donahue v. Tokyo Electron Am., Inc.,* 42 F. Supp. 3d 829, 838

(W.D. Tex. 2014) (citing *Salts v. Epps,* 676 F.3d 468, 474 (5th Cir. 2012)).

Here, an analysis of the relevant factors establishes that any "neglect" by XYMOGEN is

excusable. First, and most importantly, there is **no** danger of prejudice to Plaintiffs by allowing

the amendments to the invalidity contentions. Plaintiffs have been on notice of XYMOGEN's

theories of invalidity, and the evidence that XYMOGEN intends to rely upon, since at least

March 2015, when XYMOGEN moved to amend the briefing schedule on dispositive motions.

(*See* Dkt. 40). The *Markman* order indeed confirmed the viability of these defenses, but that is

ultimately immaterial to the question of prejudice, because Plaintiffs have long been aware of the

underlying evidence. *See Lexar Media, Inc. v. Pretec Elecs. Corp.,* No. C00-04770 MJJ, 2007

WL 1170633, at *1 (N.D. Cal. Apr. 18, 2007) (granting accused infringer's motion to amend its

invalidity contentions on the basis that there is no prejudice where the patentee was on notice of

the possible defenses during the claim construction briefing and the ***patentee failed to show how***
***it would have conducted discovery differently if the new invalidity allegations had been in the***
***case earlier***).  Nor does the possibility of having to conduct further discovery or incur additional
expenses to amend responses to invalidity contentions constitute prejudice.  *See Celgene Corp. v.*
*Natco Pharma Ltd.,* No. CIV.A. 10-5197 SDW, 2015 WL 4138982, at *3 (D.N.J. July 9, 2015)
(finding no adverse prejudice resulted from allowing amendment because expert reports had not
yet been exchanged, fact discovery could be reopened for the limited purpose of conducting
discovery on the new invalidity contentions, a trial date had not been set, and additional expenses
in amending responses to invalidity contentions did not constitute undue prejudice).  Plaintiffs'
opposition raises no legitimate argument on these indisputable facts.

Further, there is no impact on judicial proceedings in this case, because expert discovery
has not yet begun, the trial date has not been set, and motions for summary judgment have not
yet been briefed.  *Cf. Yodlee,* 2007 WL 1454259, at *3 (lack of substantial prejudice to the non-
movant as the "most important" factor, and noting, "should [non-movant] Yodlee require more
time to conduct discovery related to the newly discovered prior art, the Court will consider a
request by Yodlee for an appropriate extension of the discovery cutoff to do so.").

Finally, XYMOGEN has acted in good faith in developing its case and notifying
Plaintiffs of its intention to raise these invalidity defenses.  Indeed, after the Court entered its
*Markman* order, XYMOGEN sought to meet and confer with Plaintiffs to seek a stipulation on
the amendment of the invalidity contentions. (*See* Dkt. 124, at ¶ 6). XYMOGEN received
Plaintiffs' refusal on December 14, 2015 (*id.* at ¶ 7) and filed the instant motion two weeks later.
A stipulation could have avoided the need for the present motion. *See West v. Jewelry*

*Innovations, Inc.,* 2009 WL 152136, *2–*4 (N.D. Cal. 2009) (parties' stipulation to permit reciprocal amendments of preliminary infringement and invalidity contentions provide good cause for the accused infringer to amend its invalidity contentions) (citing *Atmel Corp. v. Authentec, Inc.,* No. C 06-2138, 2008 WL 276392, at *3 (N.D. Cal. Jan. 31, 2008)).

In these circumstances, the "late" filing of the amended contentions under Rule 6(b)(1)(B) should be allowed. *See, e.g., Joao Bock Transaction Sys., LLC v. Online Res. Corp.,* No. 8:13CV245, 2015 WL 9459917, at *4 (D. Neb. Dec. 23, 2015) (reversing magistrate judge's order refusing amendment, and noting, "it would not be fair, under these circumstances to deny the alleged infringer leave to present its defense of invalidity by filing its assertions of invalidity out of time," in part because it was reasonable for movant to believe that it would be allowed to pursue its invalidity defense).

Finally, if Plaintiffs are granted the additional discovery they are currently seeking (both in this Court and in Arizona), it is highly probable that Plaintiffs will seek to amend their infringement contentions. In light of this, Plaintiffs' refusal to stipulate to simply allow **both** parties to amend contentions, and streamline proceedings, is puzzling.[4] In any event, Plaintiffs' characterization of XYMOGEN's actions as an "unexplained disregard" or a "knowing withholding" of its request is disingenuous. To the contrary, XYMOGEN has acted in good faith to prepare its case fully on the merits. XYMOGEN now seeks to amend invalidity contentions only after reviewing the *Markman* order, and unsuccessfully seeking Plaintiffs' stipulation. The amendment will streamline the issues before this Court, clarify summary judgment briefing, and

---

[4] If the Court were to deny XYMOGEN's motion to amend/supplement its invalidity contentions, XYMOGEN respectfully requests that it do the same if and when Plaintiffs seek to supplement their infringement contentions with evidence they failed to elicit during fact discovery.

prevent unnecessary surprises at trial.  In light of this, Plaintiffs' demand for fees – unsupported by *any evidence or law* – should be denied.

## III.  <u>CONCLUSION</u>

When the curtain is pulled back, Plaintiffs' strident objections to the amendment of invalidity contentions to account for late-discovered evidence in light of the Court's claim construction simply flows merely from its hope that its patent be insulated from challenge.  That, however, is not the law.

XYMOGEN took discovery and diligently moved for an amendment of the briefing schedule for dispositive motions and claim construction; at that point Plaintiffs were fully informed of XYMOGEN's defenses.  There was never a ruling on that motion.  Plaintiffs' argument that *XYMOGEN* sought to delay makes no sense, because that motion remained pending until the Court's post-*Markman* ruling on Plaintiffs' motion for reconsideration.

Finally, the constructions adopted by the Court shifted and strengthened XYMOGEN's invalidity defenses, and it makes sense for the parties' respective theories to be fully disclosed now, before summary judgment briefing begins.

For these reasons, XYMOGEN respectfully requests that its motion for leave to amend or supplement its contentions be granted, and that Plaintiffs' request for its fees in responding to XYMOGEN's instant motion be denied.

Dated:  February 8, 2016

Respectfully submitted,

K&L GATES LLP

*/s/ L. Scott Oliver*
L. Scott Oliver

Jackson Ho
Ranjini Acharya

RAY QUINNEY & NEBEKER P.C.
James S. Jardine
Arthur B. Berger
Samuel C. Straight

Attorneys for Defendant and Counterclaimant
XYMOGEN, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of February, 2016, I electronically filed the foregoing

**REPLY MEMORANDUM IN SUPPORT OF XYMOGEN'S MOTION FOR LEAVE TO**

**AMEND OR SUPPLEMENT INVALIDITY CONTENTIONS** with the Clerk of the Court

using the CM/ECF system, which sent notification of such filing to the following counsel of

record:

> Kristine E. Johnson
> Juliette P. White
> PARSONS BEHLE & LATIMER
> 201 South Main, Suite 1800
> Salt Lake City, Utah 84111
> kjohnson@parsonsbehle.com
> jwhite@parsonbehle.com

/s/Lori M. McGee