IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| THORNE RESEARCH, INC. and SOFTGEL FORMULTORS, INC., <br><br>Plaintiffs, <br><br>v. <br><br>ATLANTIC PRO-NUTRIENTS, INC., d/b/a/ XYMOGEN, <br><br>Defendants. | MEMORANDUM DECISION AND ORDER <br><br>Case No. 2:13-cv-784 <br><br>District Judge Ted Stewart <br><br>Magistrate Judge Paul M. Warner |

District Judge Ted Stewart referred this case to Magistrate Judge Paul M. Warner pursuant to 28 U.S.C. § 636(b)(1)(A).[1] Before the court are the following motions: (1) Atlantic Pro-Nutrients, Inc. d/b/a/ Xymogen's ("Defendant") motion to compel;[2] (2) Thorne Research, Inc. ("Thorne") and Softgel Formulators, Inc.'s ("SFI") (collectively, "Plaintiffs") motion for dedesignation of allegedly privileged documents;[3] and (3) Defendant's motion for leave to amend or supplement invalidity contentions.[4] The court has carefully reviewed the written memoranda submitted by the parties. Pursuant to civil rule 7-1(f) of the Rules of Practice for the United States District Court for the District of Utah, the court has concluded that oral argument is

---

[1] *See* docket no. 35.

[2] *See* docket no. 73.

[3] *See* docket no. 110.

[4] *See* docket no. 123.

not necessary and will determine the motions on the basis of the written memoranda. *See* DUCivR 7-1(f).

## BACKGROUND

SFI is the owner of United States Patent No. 8,491,888 (the "'888 Patent") entitled "Highly Absorbable Coenzyme Q10 Composition & Method of Producing Same." Coenzyme Q10 ("CoQ10") is a natural material present in all living cells. In human cells, it is responsible for electron transfer in the production of energy. Diet, genetics, aging, or medical conditions can lower CoQ10 levels in the body and supplementation to restore CoQ10 to normal levels is touted as having health benefits. The nutritional supplement at issue is a softgel containing a CoQ10 composition, which is more readily absorbable and usable by the body than prior CoQ10 supplements. Thorne sells nutritional supplements containing a crystal-free preparation of coenzyme Q10 that has greater absorption rates than other comparable products on the market. Thorne is the exclusive licensee of the '888 Patent.

Plaintiffs filed suit against Defendant for patent infringement of the '888 Patent. Defendant filed a counterclaim seeking a declaratory judgment of non-infringement and invalidity of the '888 Patent.

### 1. Defendant's Motion to Compel

Defendant moves for an order compelling Plaintiffs to provide a complete copy of the Microsoft Access database that co-inventor Donald Steele utilized to input his formulas. Specifically, Defendant seeks the metadata it alleges is contained in the Microsoft Access database to independently determine the legitimacy of Plaintiffs' claim that Mr. Steele and his co-inventor were the first inventors of the '888 Patent. A central issue in this case is the

conception and reduction to practice of the claimed the '888 Patent. Defendant disputes the date of the claimed invention of the '888 Patent. Defendant asserts that the date of invention is relevant because a third party also conceived the claimed invention, and both he and the inventors on the '888 Patent filed their applications on the same day. Defendant also believes that Plaintiffs tampered with the Microsoft Access database to create a false early conception date.

In response, Plaintiffs argue that there is no information available in the Microsoft Access database itself regarding whether and/or when any changes were made to any of the formulas because this type of information does not exist. Plaintiffs explain that the Microsoft Access database does not maintain metadata like word processing or spreadsheet programs do. In addition, Plaintiffs state that the database is owned and maintained by a third party, Best Formulations, which stores all of its and its customers' formulations in the Microsoft Access database, not just Plaintiffs' formulations. Plaintiffs argue that ordering them to produce the entire Microsoft Access database would also give Defendant access to Best Formulations's proprietary formulas as well as formulas provided by its customers that are proprietary to those customers and highly confidential. Further, Plaintiffs contend, they have provided extensive documentation and other evidence regarding the conception of the invention, including information from the Microsoft Access database relevant to the formulas at issue. Plaintiffs also assert that there is no evidence that either Plaintiffs or Best Formulations have improperly altered or deleted any of the evidence relating to the formulas at issue.

In reply, Defendant argues that the testimony of the co-inventors is self-serving and that the documentation provided by Plaintiff does not sufficiently corroborate their testimony.

Defendant contends that it needs to independently verify the allegedly corroborating documentation supporting Plaintiffs' asserted invention dates through a forensic investigation of the metadata in the Microsoft Access database. Defendant further asserts that the stipulated protective order will safeguard third-party confidential information as Plaintiffs may provide the electronic copy of the database under the designation of "CONFIDENTIAL INFORMATION -- ATTORNEYS EYES ONLY." And, lastly, Defendant argues that Plaintiffs have failed to demonstrate that providing the database with the metadata intact would present an undue hardship or expense.

Because the parties have competing affidavits regarding whether the Microsoft Access database stores metadata, and evidence regarding the date of the invention is clearly relevant, the court concludes that Defendant ought to be allowed the opportunity to conduct a forensic analysis as to whether or not the metadata exists in its native format. While the court appreciates Plaintiffs' concerns regarding the disclosure of confidential and proprietary information, an attorneys eyes only designation pursuant to the protective order should provide a sufficient safeguard against disclosure of confidential or proprietary information. Accordingly, Defendant's motion to compel is **GRANTED**. Plaintiffs shall produce a copy of the Microsoft Access database to Defendants within ten (10) days of the date of this order.

### 2. Plaintiffs' Motion for Dedesignation of Allegedly Privileged Documents

Plaintiffs seek an order requiring Defendant to produce a document, Bates numbered XYMOGEN_238-242, that was previously produced by Defendant containing the work of a scientist employed by National Vitamin Company ("NVC"), a nonparty to this case. Defendant raised attorney/client and work product claims of privilege with respect to the document during

the Rule 30(b)(6) deposition of Defendant through its designated witness, Mike Mahoney. Defendant then "clawed back" the document by letter dated July 17, 2015, pursuant to the provisions of the Standard Protective Order. Defendant's privilege log states "[d]ocument prepared at the request of counsel."[5] Plaintiffs argue that the document at issue should not be protected by the attorney/client or work product privileges because it was created by an employee of Defendant's third-party supplier, NVC; was neither copied nor directed to counsel; does not incorporate or reference legal advice, impressions, or conclusions; and consists solely of factual material, including the results of scientific experiments that apparently involved formulating different CoQ10 compositions and observing their properties.

Defendant asserts that while it believes the '888 Patent is invalid, at the beginning of this litigation, its counsel investigated whether a design-around to create a non-infringing alternative was feasible. Defendant states that counsel worked with Defendant and NVC (the supplier for the accused infringing product) to determine the viability of compositions that would not fall within the scope of the '888 Patent's claims. Defendant contends that the document at issue reflects those efforts. Defendant argues that if counsel had conducted that research, rather than its technical experts and supplier, those efforts would be considered privileged without question. Defendant argues that the document was prepared by NVC at the direction of counsel for the specific purpose of litigation to assist counsel in giving legal advice on design-around and non-infringing alternatives with respect to the '888 Patent. Defendant asserts that privilege covers communications between a client and a third-party, when, as here, those communications are made in confidence and for the purpose of pending litigation.

---

[5] Docket no. 110, Exhibit A.

5

Plaintiffs argue that Defendants have failed to demonstrate that the document is protected by either the attorney/client or work product privileges.  Specifically, the document at issue is replete with factual material, including ingredients, percentages and the factual results of scientific experiments.  Plaintiffs contend that there has been no showing that NVC was ever formally retained by Defendant or its counsel as an independent contractor or consultant or that it was empowered to act on behalf of Defendant.  Furthermore, Plaintiff asserts that Defendant has expressly disavowed any such relationship in this case.  Plaintiffs explain that Defendant resisted efforts to obtain discovery regarding the products in suit on the basis that those products are purchased by Defendant from NVC and that it has no relationship with NVC beyond that of supplier/purchaser.

"The work product privilege protects against disclosure of the 'mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.'" *Resolution Trust Corp. v. Dabney*, 73 F.3d 262, 266 (10th Cir. 1995) (quoting Fed. R. Civ. P. 26(b)(3)(B)).  The doctrine was created to "'shelter[] the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case.'" *United States v. Ary*, 518 F.3d 775, 782 (quoting *United States v. Nobles*, 422 U.S. 225, 238 (1975)).  The work-product privilege protects "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative." Fed. R. Civ. P. 26(b)(3)(A).  "Work product includes '[s]ubject matter that relates to the preparation, strategy, and appraisal of the strengths and weaknesses of an action, or to the activities of the attorneys involved, rather than to the underlying evidence.'" *Adams v. Gateway, Inc.*, No. 2:02-CV-106 TS, 2003 WL 23787856, at *5 (D. Utah Dec. 30, 2003) (quoting *In re Air Crash Disaster at*

*Sioux City, Iowa on July 19, 1989*, 133 F.R.D. 515, 519 (N.D. Ill. 1990)) (alteration in original).

To be protected as work product, a document "must reflect the thinking of the attorney by being an expression from her, or, if a communication to her, it must reflect back her inquiry." *Adams v. Gateway, Inc.*, No. 2:01-CV-106 TS, 2003 WL 23787856, *10 (D. Utah Dec. 30, 2003). The document in question was prepared at Defendant's request and at the direction of Defendant's counsel. Because the document was created in response to counsel's inquiry and as part of counsel's strategy concerning the current litigation, the court concludes that the document is protected by the work product privilege. As such, Plaintiff's motion is **DENIED**.

### 3. Defendant's Motion for Leave to Amend or Supplement Invalidity Contentions

Defendant seeks leave to amend or supplement its Preliminary Invalidity Contentions for the '888 Patent on the grounds that new evidence supporting invalidity obtained through discovery, confirmed by the Court's recent claim construction of the term "non-crystalline," have expanded the scope of Defendant's defenses and counterclaims. Specifically, Defendant contends that it did not have this information and did not understand its importance until after the deadline for Final Unenforceability and Invalidity Contentions passed over one year ago, on November 26, 2014. Defendant argues that the new theories of invalidity only came to light during the depositions of Trevor Jones and Robin Koon in January and February, 2015. In particular, Defendant asserts that Mr. Jones's testimony corroborated Defendant's theory that the '888 Patent is likely invalid because the named inventors were not the first inventors of the claimed subject matter of the '888 Patent. Defendant also contends that Mr. Koon's testimony likewise suggested that a CoQ10 formulation that embodies at least some of the claims of the '888 Patent was shipped to a third-party entity in the United States in 2002-2003 and that a

7

crucial step in making a crystal-free CoQ10 product was known by Mr. Steele and Mr. Koon, but that the pair made the deliberate decision to omit that information from the '888 Patent application, in violation of the best mode requirement.

Defendant also asserts that the theories of invalidity that it first identified in early 2015 depended on the Court's construction of the term "non-crystalline" in October 2015. Under the Court's construction, "non-crystalline" means "no CoQ10 crystals are visible by light microscope at magnifications of 640X"[6] thus rendering the product shipped in 2002-2003 covered by the on-sale bar under 35 U.S.C. § 102(b). Defendant acknowledges that the Court's claim construction was not the claim construction Defendant proposed. Defendant asserts that numerous district courts have granted leave to amend invalidity contentions when the court fails to adopt the movant's proposed construction. *See, e.g.*, *Celgene Corp. V. Natco Pharma Ltd.*, No. 10-5197(SDW)(SCM), 2015 WL 4138982, *3-*5 (D. N.J. July 9, 2015).

Plaintiffs assert that Defendant has failed to show good cause for amending the scheduling order to allow Defendant to serve amended invalidity contentions. The court agrees. The information upon which Defendant bases its motion has been known to Defendant since at least January/February 2015. However, despite being fully aware of this information, Defendant made no effort to seek to extend the already-expired deadline for service of Final Contentions. While Defendant acknowledges that it obtained the evidence necessitating a change to its invalidity contentions in early 2015, it argues that the significance of that evidence did not become clear until the Court issued its claim construction order on October 8, 2015.

While Defendant contends that its delay in seeking leave to amend was due to its attempt

---

[6] Docket no. 106 at 4.

to stipulate with Plaintiffs' counsel, that does not excuse Defendant's delay. The Local Patent Rules are clear and provide:

> A party may amend its Final Infringement Contentions; or Final Non-infringement, or Unenforceability and Invalidity Contentions only by order of the court upon a showing of good cause and absence of unfair prejudice to opposing parties, **made no later than fourteen (14) days of the discovery of the basis for the amendment**. An example of a circumstance that may support a finding of good cause, absent undue prejudice to the non-moving party, includes a claim construction by the court different from that proposed by the party seeking amendment.

LPR 3.4 (emphasis added). Defendant should have amended its Final Infringement Contentions fourteen days after conducting the depositions of Mr. Jones and Mr. Koon, as that is when Defendant discovered the basis for amendment and it acknowledges as such. But even assuming that it needed the Court's October 8, 2015 claim construction ruling before discovering the basis for the amendment, Defendant failed to file the instant motion until December 31, 2015, eighty-four days after that order was issued. As the Federal Circuit Court of Appeals has recognized, "[i]f the parties were not required to amend their contentions promptly after discovering new information, the contentions requirement would be virtually meaningless." *O2 Micro Intern. Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366-67 (Fed. Cir. 2006).

Based on the foregoing, this court concludes that Defendant has failed to demonstrate good cause for permitting it to amend its Final Infringement Contentions. As such, Defendant's motion is **DENIED**.

## CONCLUSION

In summary, **IT IS HEREBY ORDERED** that

(1) Defendant's motion to compel[7] is **GRANTED**. Plaintiffs shall produce a copy of

---

[7] *See* docket no. 73.

the Microsoft Access database to Defendants within ten (10) days of the date of this order.

    (2)    Plaintiffs' motion for dedesignation of allegedly privileged documents[8] is **DENIED**.

    (3)    Defendant's motion for leave to amend or supplement invalidity contentions[9] is also **DENIED**.

    **IT IS SO ORDERED**.

DATED this 22nd day of March, 2016.

BY THE COURT:

PAUL M. WARNER
United States Magistrate Judge

---

[8] *See* docket no. 110.

[9] *See* docket no. 123.