IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THORNE RESEARCH, INC. and<br>SOFTGEL FORMULATORS, INC.,<br><br>                    Plaintiffs,<br>v.<br><br>ATLANTIC PRO-NUTRIENTS, INC. d/b/a<br>XYMOGEN,<br>                    Defendant. | MEMORANDUM DECISION AND<br>ORDER MODIFYING DEADLINES<br>UNDER THE LOCAL PATENT<br>RULES AND GRANTING LIMITED<br>EXPERT DISCOVERY<br><br>Case No. 2:13-cv-784 TS<br><br>District Judge Ted Stewart |

This matter is before the Court on Thorne's Motion for Partial Summary Judgment. Two issues must be resolved before the Court reaches the merits of Thorne's Motion. First, both parties have failed to comply with the local patent rules, and each argues that the other should be precluded from raising certain arguments as a result of this non-compliance. Second, Xymogen has challenged the sufficiency of expert testimony relied on by Thorne under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*[1] For the reasons set out below, the Court will modify the deadline for filing final infringement and non-infringement contentions under the local patent rules and will allow the parties to engage in limited expert discovery.

---

[1] 509 U.S. 579 (1993).

1

I. DISCUSSION

A. *Compliance with Local Patent Rules*

Both parties have failed to comply with the Local Patent Rules ("LPR") governing the filing of Final Contentions. The Local Patent Rules were intended to "provide a standard structure for patent cases that will permit greater predictability . . . for the court and the litigants."[2] The drafters of the rules did not intend to confine a party to contentions made at the outset of the case, but after a reasonable period of fact discovery has taken place, "each party must provide a final statement of its contentions on relevant issues, which the party may thereafter amend only 'upon a showing of good cause and absence of unfair prejudice to opposing parties, made no later than fourteen (14) days of the discovery of the basis for the amendment.'"[3]

Xymogen failed to timely file Final Non-Infringement Contentions. Thorne timely served its Final Infringement Contentions, but has argued a theory of infringement in its Motion that does not appear in its contentions.[4] Each party argues that the other should be penalized for its failure to comply with the LPR's requirements. The Court has broad discretion in how it treats non-compliance of local patent rules. The Court may "sua sponte or upon motion modify the obligations and deadlines of the LPR based on the circumstances of any particular case when it will advance the just, speedy, and inexpensive determination of the action."[5]

---

[2] LPR, Preamble.

[3] *Id.* (quoting LPR 3.4).

[4] Docket No. 160-1, at 3, 5 (claiming that safflower oil, rather than avocado oil, functioned as a carrier oil in the accused products).

[5] LPR 1.1.

The Preamble to the local patent rules provides that final contentions on relevant issues are to be served "[a]fter a reasonable period for fact discovery."[6] The deadline for final contentions in this case was in late 2014, well before any significant exchange of information was under way. The discovery process in this case was unusual because the bulk of discovery was produced by third-party National Vitamin in response to subpoena. Due to attempts by Xymogen and National Vitamin to quash the subpoena, responsive documents were not produced until late April, 2016, just over a month before Thorne filed this Motion. These new documents appear to have a significant impact on Thorne's infringement theories.

The Court finds that the significant delays of discovery warrant a modification of the deadline for serving final contentions. Penalizing both parties in light of the unusual circumstances would not promote the "just, speedy, and inexpensive determination" of this action.[7] The Court will therefore allow Thorne to amend its Final Infringement Contentions to include its "avocado oil" theory. The Court will also allow Xymogen to file Final Non-Infringement Contentions.[8] The parties have thirty days to serve their final contentions.

In connection with the final contentions, the parties should prepare supplemental briefing regarding Thorne's Motion for Partial Summary Judgment. The parties have 60 days to file this supplemental briefing (30 days after the latest date that final contentions may be served). The parties will have fifteen days thereafter to respond to the other's supplemental brief.

---

[6] LPR, Preamble.

[7] *See* LPR 1.1.

[8] By allowing Xymogen to file non-infringement contentions, the Court is not undoing its order that Xymogen may not file invalidity contentions. *See* Docket No. 139, at 9 (denying Xymogen's attempt to amend or supplement invalidity contentions because Xymogen failed to take action until months after it discovered the basis for amendment); Docket No. 151 (overruling Xymogen's objection to Magistrate Judge Warner's decision).

B. *The Eurofins Analyses*

Claim 1 of the patent at issue requires a "non-crystalline coenzyme Q10."[9] The Court construed this to mean that "no CoQ10 crystals are visible by light microscope at magnifications of 640X."[10] The Court's construction of "non-crystalline" made necessary a microscopic analysis of the accused products. However, the Court construed this term after fact discovery had closed and after the parties agreed to stay expert discovery pending summary judgment.

On January 29, 2016, Thorne hired Eurofins Scientific, Inc. ("Eurofins") to perform an analysis of the accused products, including a microscopic study.[11] Eurofins found no crystals.[12] Xymogen pointed out in its Opposition that the Eurofins analysis did not specify the magnification used to check for crystals. Thorne went back to Eurofins to obtain a second analysis on July 28, 2016. This time, Eurofins included the appropriate magnification levels and again found no crystals.[13] Xymogen asks the Court to disregard the two Eurofins analysis as untimely and insufficient under Federal Rule of Evidence 702.

Xymogen argues that the Court should disregard the second Eurofins analysis under DUCivR 56-1(d), which states that additional evidence cited in a reply brief will not be considered by the Court unless it is cited "to rebut a claim that a material fact is in dispute." Because Xymogen disputed the fact that the accused products were "crystal-free" for the first time in its Response, DUCivR 56-1(d) is not grounds for the Court to disregard the Eurofins analysis.

---

[9] Docket No. 156-1, at col. 7, lines 5–10.

[10] Docket No. 106, at 4.

[11] Docket No. 156-14, at 3.

[12] *Id.*

[13] Docket No. 168-1, at 1.

Regarding timeliness, it is true that Plaintiff engaged in one-sided expert discovery well after the parties agreed to stay such discovery.[14] However, the necessity for expert testimony in the form of a microscope analysis only became clear in October 2015, *after* discovery had been stayed. In addition, Thorne argues that it had a reasonable belief that Xymogen had conceded this issue based on Xymogen's failure to file non-infringement claims and because Xymogen markets the products as "crystal free."[15]

Finally, Xymogen argues that the Eurofins analyses are inadmissible under *Daubert* and Federal Rule of Evidence 702. *Daubert* requires the Court to ensure that an expert is qualified, that an expert's methods are reliable, that expert testimony is based on sufficient facts or data, and that an expert's methods were reliably applied to the facts of the case.[16] Thorne concedes that Eurofins' microscopic analyses are "expert in nature."[17]

Thorne has not designated an expert witness but has produced affidavits from Kent Rader, a Business Unit Manager at Eurofins. Mr. Rader avers that he supervised Eurofins staff members who performed the microscopic testing.[18] Mr. Rader states that Eurofins offers "validated analytical methods for evaluating various aspects of . . . products."[19] These statements do not provide the Court with enough information to engage in a *Daubert* analysis.

---

[14] Fact discovery closed on June 12, 2015. Docket No. 28, at 2. On September 21, 2015, the parties agreed at a hearing that expert discovery should be stayed pending a ruling on summary judgment. Docket No. 115, at 2.

[15] Docket Nos. 156-3; 156-4. Xymogen claims that it marketed the products as "crystal free" because National Vitamin told Xymogen that some ingredients helped prevent recrystallization. Xymogen never attempted on its own to determine whether the product was crystal free. *See* Docket No. 156-5, at 70:3–22.

[16] *See* Fed. R. Evid. 702.

[17] Docket No. 171, at 4.

[18] Docket No. 156-14, at 1–2.

[19] Docket No. 168, at 2.

The credentials of Mr. Rader or any lab technician are not before the Court, and neither is a description of methods used.

The Court declines to decide the *Daubert* issue at this time because the issue is premature.[20] The parties agreed to avoid the expense of expert discovery until after summary judgment. However, their agreement took place before it became certain that expert testimony would be prerequisite to the summary judgment determination. A microscopic analysis does not appear to be expensive, highly technical, or controversial. Therefore, the interests of the parties could be preserved by allowing expert discovery limited to the issue of whether CoQ10 crystals can be seen by light microscope at a magnification of 640X.

For these reasons, the Court will allow expert testimony on the very narrow issue of whether crystals can be seen in the accused products under light microscope at a magnification of 640X. The Court will grant Thorne thirty days to designate its expert, produce an expert report, and otherwise comply with the requirements of Federal Rule of Civil Procedure 26 and Federal Rule of Evidence 702. Thorne should make its expert available for deposition within thirty days thereafter. If Xymogen remains concerned about the sufficiency of expert testimony after this limited discovery is concluded it may renew its objection.

---

[20] *See Thomas v. City of Blanchard*, No. CIV-06-489-T, 2007 U.S. Dist. LEXIS 96088, at *6 (W.D. Okla. Apr. 13, 2007) (unpublished) (denying a motion in limine to exclude expert testimony as premature where a witness had not yet been designated as an expert and the credentials were not before the Court); *Allenbrand v. Louisville Ladder Grp., LLC*, No. 05-2511-KHV-GLR, 2006 U.S. Dist. LEXIS 66497, at *13 (D. Kan. Sep. 15, 2006) (unpublished) (finding a *Daubert* challenge premature where expert reports were incomplete and trial was still five months away); *see also Cortes-Irizarry v. Corporacion Insular De Seguros*, 111 F.3d 184, 188 (1st Cir. 1997) (cautioning against excluding expert testimony on pre-trial motions except where "defects are obvious on the face of a proffer"); *Jahn v. Equine Servs., PSC*, 233 F.3d 382, 393 (6th Cir. 2000) ("A district court should not make a *Daubert* ruling prematurely, but should only do so when the record is complete enough to measure the proffered testimony against the proper standards of reliability and relevance.").

## II.  CONCLUSION

It is therefore

ORDERED that Thorne has 30 days to serve amended Final Infringement Contentions to include its theory regarding avocado oil in accordance with the local patent rules.  During the same 30 days, Xymogen may serve any Final Non-Infringement Contentions.  Thereafter, the parties will have 30 days to file supplemental briefing on Thorne's Motion for Partial Summary Judgment in light of their contentions.  The parties will then have 15 days to file a response.

Thorne has 30 days to designate its expert on the limited issue of whether CoQ10 crystals in the accused products are visible by light microscope at magnifications of 640X, produce an expert report, and otherwise comply with the rules governing expert testimony.  Thorne should make its expert available for deposition within 30 days thereafter.

DATED September 26, 2016.

BY THE COURT:

_____
TED STEWART
United States District Judge