IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| THORNE RESEARCH, INC. and SOFTGET FORMULATORS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> ATLANTIC PRO-NUTRIENTS, INC. d/b/a XYMOGEN, <br><br> Defendant. | MEMORANDUM DECISION AND ORDER SUSTAINING XYMOGEN'S EVIDENTIARY OBJECTIONS IN RESPONSE TO PLAINTIFFS' REPLY MEMORANDUM <br><br><br> Case No. 2:13-CV-784 TS <br><br> District Judge Ted Stewart |

This matter is before the Court on Defendant's Evidentiary Objections in Response to Plaintiffs' Reply Memorandum. For the reasons set forth below, the Court will sustain the objections and disregard Mr. Rader's expert opinions.

I. BACKGROUND

On January 29, 2016, Thorne hired Eurofins Scientific, Inc. ("Eurofins") to perform a microscopic study, among other things.[1] Thorne went back to Eurofins to obtain a second analysis on July 28, 2016.[2] Xymogen objected to the analyses under Federal Rule of Evidence 702, among other things. In an Order dated September 26, 2016, the Court gave the parties time to engage in limited expert discovery on the issue of crystallinity in accordance with Rule 702 prior to the Court's decision of Thorne's Motion for Partial Summary Judgment. Thorne designated Kent Rader, a Business Unit Manager at Eurofins, produced an expert report, and

---

[1] Docket No. 156-14, at 3.

[2] Docket No. 168-1, at 1.

made Mr. Rader available for deposition. Xymogen then renewed its objection to the admissibility of the analyses, and specifically to Mr. Rader's qualifications.

## II.  DISCUSSION

The Court has a gatekeeping duty to ensure that an expert is qualified, that an expert's methods are reliable, that expert testimony is based on sufficient facts or data, and that an expert's methods were reliably applied to the facts of the case.[3] The Court has discretion to exercise its *Daubert* gatekeeping role at summary judgment by excluding a proffer of expert testimony that is clearly deficient.[4]

When considering expert qualifications under Rule 702, the Court looks not to the expert's qualifications in general, but to whether an expert has sufficient "skill, experience or knowledge" in the specific field in which the expert is offering testimony.[5] The qualifications must be sufficient "to make it appear that his opinion would rest on substantial foundation."[6] In addition, "[w]hether a witness can parrot the results of a model does not mean that he is qualified to explain how [a] model works or to opine on the statistical validity or interpretation of the results."[7]

---

[3] *See* Fed. R. Evid. 702, *Daubert v. Merrell Dow Pharm*aceuticals*, Inc.*, 509 U.S. 579, 589 (1993).

[4] *See MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 913 (Fed. Cir. 2012) (granting summary judgment after excluding an expert's testimony under *Daubert*); *see also Norris v. Baxter Healthcare Corp.*, 397 F.3d 878, 886 (10th Cir. 2005) (finding that a district court "did not abuse its discretion in exercising its *Daubert* gatekeeping role" by excluding expert testimony at summary judgment).

[5] *Graham v. Wyeth Labs., Div. of Am. Home Prods. Corp.*, 906 F.2d 1399, 1408 (10th Cir. 1990) (quoting *Bridger v. Union Railway Co.*, 355 F.2d 382, 387 (6th Cir. 1966)).

[6] *Id.*

[7] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 928 (10th Cir. 2004).

Thorne retained Mr. Rader to offer opinions regarding whether the accused products contain visible crystals. Mr. Rader forwarded samples of the accused products to another entity, Alkemist Laboratories, with instructions to perform a microscopic analysis at a certain magnification, and later discussed the tests with lab technicians.[8] The results of the microscopic analyses showed no crystals using a light microscope with a polarizing filter and a paxcam digital camera at magnifications of 600X and 1000X.

Xymogen argues that Mr. Rader's opinion regarding crystallinity should be excluded under Federal Rule of Evidence 702 because Mr. Rader is not an expert in microscopy and lacks knowledge about the methodology and procedures used by Alkemist Laboratories. The Court agrees. Mr. Rader is a chemist, not a microscopist. By his own admission, Mr. Rader has no expertise in microscopy.[9] He did not perform this microscopic test nor did he supervise the testing.[10] Mr. Rader simply ensured that the test results from Alkemist were correctly transposed into the Eurofins report.[11] Mr. Rader never attempted to validate the results of Alkemist's testing.[12] In his deposition, Mr. Rader stated that he did not know how Alkemist removed its sample from the softgel and stated that he "would have to defer to the experts" to explain why a polarized filter was used.[13] When asked how one would reach a conclusion regarding the presence of crystals, Mr. Rader responded, "I would have to ask the—an expert on that."[14]

---

[8] Docket No. 185-1, at 52.

[9] *Id.* at 12–13.

[10] *Id.* at 51.

[11] *Id.* at 58.

[12] *Id.* at 76, 80.

[13] *Id.* at 112–13.

[14] *Id.* at 114.

Mr. Rader's testimony implies that the process of preserving a sample, using a microscope with appropriate lighting and filters, photographing the sample, and reaching a determination regarding whether crystals are visible requires some degree of expertise.[15] Mr. Rader does not have this expertise.[16] Therefore, Mr. Rader is not in a position to opine about the validity or interpretation of the test's results.

Xymogen persuasively cites *Petersen v. Daimler Chrysler Corp.*[17] In that case, a testifying expert attempted to base his opinions in part on a computer program analysis performed by a non-testifying colleague.[18] Although the expert was familiar with the type of analysis at issue, he could not provide the input data used to construct the report, could not confirm that the report was accurate, and could not attest to the reliability of the methods used.[19] Judge Campbell found that the expert did "not have the requisite familiarity, knowledge, or technical judgment of the methods or reasoning applied . . . to be allowed to present opinions based on the . . . report to the jury. If [the expert] did so, he would be serving as nothing more than a mouthpiece" for the individual who prepared the report.[20] The facts of this case are on all fours with *Petersen* and the Court finds Judge Campbell's reasoning persuasive.

Thorne argues that the Court should take into consideration that a microscopic analysis is not as intricate or controversial as some other expert analyses. While this may be true, the procedures used still require some degree of expertise. The Court cannot overlook the fact that

---

[15] *Id.* at 112–14.

[16] *Id.* at 12 ("I'm a chemist, but I'm not a trained microscopist.").

[17] No. 1:06-CV-108-TC, 2011 WL 2491026 (D. Utah June 22, 2011).

[18] *Id.* at *1.

[19] *Id.* at *3.

[20] *Id.* at *5.

Thorne has designated an individual with no expertise in microscopy whatsoever, one who cannot explain the methods employed or speak to the validity of the results.  The Court will therefore exclude Mr. Rader's opinions regarding crystallinity for purposes of Thorne's Motion for Summary Judgment due to Mr. Rader's lack of qualifications.

## III. CONCLUSION

It is therefore

ORDERED that Xymogen's Evidentiary Objections in Response to Plaintiffs' Reply Memorandum (Docket No. 170) is SUSTAINED.

DATED this 30th day of January, 2017.

BY THE COURT:

Ted Stewart
United States District Judge