IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF UTAH

| THORNE RESEARCH, INC. and SOFTGEL FORMULATORS, INC., <br><br> Plaintiffs, <br> vs. <br><br> XYMOGEN, <br><br> Defendant. | MEMORANDUM DECISION AND ORDER DENYING PLAINTIFFS' MOTION TO AMEND FINAL INFRINGEMENT CONTENTIONS <br><br> CASE NO. 2:13-CV-784 TS <br> Judge Ted Stewart |
|---|---|

This matter is before the Court on Plaintiffs' Motion to Amend Final Infringement Contentions. Thorne seeks leave to amend its final infringement contentions by adding Xymogen's CoQMax ME™ and CoQMax-100 ME™ (the "ME products") as infringing products. For the following reasons, the Court denies the Motion.

I. BACKGROUND

On August 22, 2013, Thorne and Softgel Formulators (collectively, "Thorne") filed the present lawsuit against Xymogen for infringement of United States Patent No. 8,491,888, titled "Highly Absorbable Coenzyme Q10 Composition and Method of Producing Same" (the '888 Patent).[1] Thorne served Initial Infringement Contentions in May 2014, listing Xymogen's CoQMax-100CF™ and CoQmax CF™ (the "CF products") as accused products.

In the fall of 2016, Xymogen discontinued its CF products and began selling its new ME products. Around the same time, in October 2016, Thorne served its Final Infringement Contentions, listing only the CF products as the accused products. Then, in April 2017, while obtaining samples of the CF products for expert testing, Thorne learned of Xymogen's

---

[1] U.S. Patent No. 8,491,888 (filed May 4, 2007); *see also* Docket No. 156-1.

discontinuance of all CF products. Nine months later, on January 16, 2018, Thorne confirmed that Xymogen considers the CF and ME products to be different. Thorne has now filed this Motion to add the ME products to its Final Infringement Contentions.

## II. STANDARD OF REVIEW

Under Local Patent Rule 3.4, "A party may amend its Final Infringement Contentions . . . only by order of the court upon a showing of good cause and absence of unfair prejudice to opposing parties, made no later than fourteen (14) days of the discovery of the basis for the amendment." "'[G]ood cause' requires a showing of diligence," and "[t]he burden is on the movant to establish diligence rather than on the opposing party to establish a lack of diligence."[2]

## III. DISCUSSION

Thorne argues that it has good cause to amend because it "was unaware that Xymogen considered the CF Products and the ME Products to be different, and was further led to believe that the products were the same by Xymogen."[3] Thorne argues that Xymogen: "(1) did not supplement its discovery; (2) produced sales figures that treated the CF Products and ME Products as the same; (3) produced an expert rebuttal report that treated the ME Products as accused; and (4) treated the CF Products and ME Products as the same in its marketing,"[4] leaving Thorne no reason to believe that the two products were different until January 16. In support of its argument that Xymogen failed to supplement discovery, Thorne argues that Xymogen had an obligation under Federal Rule of Civil Procedure 26(e) to supplement Thorne's interrogatory which requested that Xymogen "[i]dentify the name and product or catalog number

---

[2] *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366 (Fed. Cir. 2006).

[3] Docket No. 253, at 5.

[4] *Id.* at 7.

of all products that [Xymogen has] made, ha[s] manufactured, sold, or marked in the United States that include coenzyme Q10 other than (a) [Xymogen's] CoQmax-100CF product and (b) [Xymogen's] CoQmax CF product."[5]

Xymogen's response focuses on the issue of timeliness, arguing that "Thorne has known of Xymogen's new products . . . for at least nine months, but has failed to accuse them."[6] Xymogen argues that, "[w]hether or not Thorne believed that Xymogen considered the CF and ME Products to be the same is irrelevant. Thorne had an obligation to seek leave to amend its Contentions within fourteen (14) days after becoming aware of the ME Products and it failed to do so."[7] The Court agrees.

A belief that the CF and ME products are the same does not excuse Thorne from acting diligently to clarify whether it needed to amend its Final Infringement Contentions. In *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, the Federal Circuit noted several instances where the plaintiff had reason to know that it needed to move to amend its contentions. However, the plaintiff waited several months after the latest of these instances to serve proposed amended contentions and then waited two more weeks before formally moving to amend. As a result, the district court's finding of a lack of diligence, and therefore a lack of good cause, was upheld.[8]

---

[5] Docket No. 253-2, at 17.

[6] Docket No. 266, at 1.

[7] *Id.* at 4 (internal citations omitted).

[8] 467 F.3d, at 1367 ("Here, the district court's finding of a lack of diligence by O2 Micro was not unreasonable or arbitrary. O2 Micro had reason to know of the open lamp theory as early as March 2002 when it received a data sheet identifying the open lamp pin as part of MPS's initial disclosures. Even accepting O2 Micro's contention that it could not know how the open lamp pin operated until the Moyer deposition in late February 2003 and focusing on the period after this deposition, as the district court did, O2 Micro waited almost three months, until May 23, to serve its proposed amended contentions and two more weeks to formally move to amend.").

Just like in *O2 Micro*, there are instances prior to January 16, 2018, where Thorne had reason to know that Xymogen considered the CF and the ME products to be different. As early as April 2017, Thorne realized that the CF products had been discontinued and Xymogen was now selling and marketing the ME products in their place. Even with Xymogen's admission that the ingredients in the products were the same, a change in name and labeling would have led a diligent party to inquire as to whether Xymogen considered the new ME products to be different.

Next, Xymogen's expert, Dr. Prestwich, stated in his report, "I understand that the [ ] Defendant Xymogen's products, CoQ10max CF, and CoQ10max-100 CF are accused of infringement in Plaintiffs' infringement contentions . . . however, the Brothers and Abato reports also refer to CoQ10max ME and CoQ10max-100 ME."[9] This statement draws a clear distinction that would have led a diligent party seek clarification from the opposing party. And even though Dr. Prestwich testified at his deposition that he believed the ME products were at issue in this litigation,[10] Thorne still should have made the effort to clarify Xymogen's position on the two products.

Finally, whether or not Xymogen failed to supplement its answer to Thorne's interrogatory, Thorne still had reason to know that the ME products may be different than the CF products.[11]

The Court, therefore, finds that, while Xymogen should have been more forthcoming, Thorne had reason to know well before January 16, 2018, that Xymogen did not consider the CF and ME products to be the same. Thorne failed to diligently seek clarification on whether it

---

[9] Docket No. 253-9, at 2.

[10] *See* Docket No. 253-10, at 88:6–15.

[11] The issue of whether this alleged Rule 26 violation should lead to the exclusion of argument and evidence that there are differences between the ME products and CF products will be addressed in the Court's ruling on the parties' motions in limine. *See* Docket Nos. 271 & 281.

needed to amend its final infringements, and thus fails to provide good cause to amend. Additionally, inasmuch as Thorne had reason to know well before January 10, 2018 (fourteen days before Thorne filed its Motion), that Xymogen considered the CF and ME products to be different, the Motion is also untimely.

IV. CONCLUSION

It is therefore

ORDERED that Plaintiffs' Motion to Amend Final Infringement Contentions (Docket No. 251) is DENIED.

DATED this 2nd day of February, 2018.

BY THE COURT:

Judge Ted Stewart