IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF UTAH

| | |
|---|---|
| THORNE RESEARCH, INC. and SOFTGEL FORMULATORS, INC.,<br><br>     Plaintiffs,<br>vs.<br><br>XYMOGEN,<br><br>     Defendant. | MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFFS' MOTION *IN LIMINE* TO EXCLUDE DIFFERENCES BETWEEN ME PRODUCTS AND CF PRODUCTS AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION *IN LIMINE* NO. 4 TO EXCLUDE CONTENTIONS NOT DISCLOSED IN PLAINTIFFS' FINAL INFRINGMENT CONTENTIONS<br><br>CASE NO. 2:13-CV-784 TS<br><br>Judge Ted Stewart |

This matter is before the Court on Plaintiffs' Motion *In Limine* to Exclude Differences Between ME Products and CF Products and Defendant's Motion *In Limine* No. 4 to Exclude Contentions Not Disclosed in Plaintiffs' Final Infringement Contentions. For the following reasons, the Court grants Plaintiffs' Motion and grants in part and denies in part Defendant's Motion.

I.      BACKGROUND

In May 2014, Plaintiffs Thorne and Softgel Formulators (collectively, "Thorne") served Initial Infringement Contentions which listed Xymogen's CoQMax-100CF and CoQmax CF (the "CF products") as accused products. Later that year, Xymogen discontinued its CF products and began selling CoQmax-100 ME and CoQmax ME (the "ME products") instead. Around the same time, in October 2016, Thorne served its Final Infringement Contentions, listing only the CF products as the accused products.

1

In April 2017, while obtaining samples of Xymogen's products for expert testing, Thorne learned of Xymogen's discontinuance of all CF products. Nine months later, on January 16, 2018, Thorne confirmed that Xymogen considers the CF and ME products to be different. Thorne now seeks to exclude any testimony or argument from Xymogen regarding any purported differences in formulation between the CF and the ME products, and Xymogen seeks to exclude Thorne from presenting evidence or argument regarding the ME products and any evidence or argument that Xymogen's products contain Clarinol A-80, Clarinol G-80, or Capmul.

## I.   STANDARD OF REVIEW

"A party who has . . . responded to an interrogatory . . . must supplement or correct its disclosure or response: in a timely manner if the party learns that in some material respect the disclosure or response is incomplete . . . ."[1] If a party fails to provide information in compliance with Rule 26(e), "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."[2] "A district court need not make explicit findings concerning the existence of a substantial justification or the harmlessness of a failure to disclose."[3] However, in exercising its discretion, the court should consider: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness."[4]

---

[1] Fed. R. Civ. P. 26(e)(1)(A).

[2] Fed. R. Civ. P. 37(c)(1).

[3] *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999).

[4] *Id.*; *see also HCG Platinum, LLC v. Preferred Prod. Placement Corp.*, 873 F.3d 1191, 1203 (10th Cir. 2017) ("In making a discretionary decision, a court must present an explanation

II.     DISCUSSION

The Court's Order denying Thorne's motion to amend its final infringements to include ME barred Thorne from arguing that the ME products are accused products. The Court must now determine whether Xymogen violated Rule 26 in failing to disclose the existence of the ME products.

A. *Excluding Argument that the CF and ME Products are Different*

Thorne's Interrogatory No. 20 requested that Xymogen "[i]dentify the name and product or catalog number of all products that You have made, had manufactured, sold, or marked in the United States that include coenzyme Q10 other than (a) Your CoQmax-100CF product and (b) Your CoQmax CF product."[5] Xymogen's response directed Thorne to documents being produced during discovery and was never supplemented to include the existence of the ME products.

Thorne had no knowledge of this switch until April 2017, and only learned of it when Thorne purchased products for expert testing. While the Court already found that Thorne had reason to inquire further into whether Xymogen considered the CF and ME products to be different products, this does not excuse Xymogen's failure to disclose this information.

Thorne alleges that Xymogen produced materials considering both products side-by-side and produced experts who tested both products. Without disclosing its view of the products as

---

for its choice sufficient to enable a reviewing court to determine that it did not act thoughtlessly, but instead considered the factors relevant to its decision and in fact exercised its discretion.") (quotation marks omitted); *Gale v. Uintah Cty.*, --- F. App'x---, 2017 WL 6397733, *5 (10th Cir. Dec. 15, 2017) ("Where a district court does not consider the *Woodworker's Supply* factors, the 'failure to consider this criteria amounts to legal error, and we must conclude that the district court abused its discretion on that ground alone.'") (quotation marks omitted).

[5] Docket No. 253 Ex. B, at 17.

different, Xymogen's actions may have been misleading. Further, Xymogen stated that it "does not contend that the CF and ME products contain different ingredients . . . ."[6]

The Court must, therefore, consider these facts in light of the *Woodworker's Supply* factors. First, the discovery just weeks before trial that Xymogen did not consider the CF and ME products to be the same results in prejudice to Thorne as Thorne prepared its case with the belief that the products were the same. Second, there is no time to cure the failure since the trial starts next week. Third, the disruption to trial could be great as Thorne has had little time to prepare for the argument that these products are different. Finally, whether Xymogen's actions were a result of bad faith or a failure in judgment, these factors weigh heavily against a finding that Xymogen's Rule 26 violation was harmless or justified in any way.

The Court, therefore, precludes the parties from arguing that there is a difference between the CF and ME products. Further, in light of the Court's previous order denying amendment of Thorne's final infringments, neither party should address the ME products at all as the ME products are not accused products and are no longer at issue in this case. Xymogen should immediately provide Thorne with updated sales information on the CF products that does not include ME sales. To the extent it cannot, Xymogen will be precluded from arguing that Thorne's damages, if any, cannot include ME product sales.

B.  *Arguments Regarding Products Containing Clarinol A-80, Clarinol G-80, or Capmul*

Next, "Xymogen requests that the Court prohibit Plaintiffs from presenting evidence or argument that Xymogen's products contain Clarinol A-80, Clarinol G-80, or Capmul because these contentions were not timely disclosed and were already struck by the Court."[7]

---

[6] Docket No. 266, at 3.
[7] Docket No. 283, at 1.

Thorne responds that these three products "are merely sources for the ingredients undisputedly described in Thorne's infringement contentions"[8] and that because they disclosed the generic ingredients they were not required to disclose the branded products those ingredients were sourced from.

While the specific product names were not included in Thorne's contentions, the generic ingredients that are sourced from the branded Clarinol A-80, Clarinol G-80, and Capmul (products Xymogen was aware of) were properly disclosed. The listing of these ingredients is sufficient notice to Xymogen that the products may be discussed resulting in the use of the names being harmless and non-prejudicial to Xymogen. And while the Court did strike the contentions, this was a result of Thorne failing to seek leave from the Court to add them rather than a finding that the products could not be discussed.[9]

For these reasons, the Court finds that Xymogen was sufficiently put on notice and Thorne may use the branded names of the products in trial so long as Thorne clearly explains that the products are the source of the ingredients.

## III. CONCLUSION

It is therefore

ORDERED that Plaintiffs' Motion *In Limine* to Exclude Differences Between ME Products and CF Products (Docket No. 271) is GRANTED. Defendant's Motion *In Limine* No. 4 to Exclude Contentions Not Disclosed in Plaintiffs' Final Infringement Contentions (Docket No. 281) is GRANTED IN PART AND DENIED IN PART. Defendant is also ordered to

---

[8] Docket No. 318, at 2.

[9] "The Court will grant Xymogen's Motion in part by striking the contentions recently added by Thorne without leave from the Court." Docket No. 195, at 2.

5

immediately produce updated sales information on the CF products that does not include information on the ME products.

DATED this 9th day of February, 2018.

BY THE COURT:

_____
Judge Ted Stewart