IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF UTAH

| | |
|---|---|
| THORNE RESEARCH, INC. and SOFTGEL FORMULATORS, INC., <br><br> Plaintiffs, <br> vs. <br><br> XYMOGEN, <br><br> Defendant. | MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW AND PRECLUSION OF ARGUMENT REGARDING DAMAGES <br><br> CASE NO. 2:13-CV-784 TS <br> Judge Ted Stewart |

This matter is before the Court on Defendant's Motion for Judgment as a Matter of Law and Preclusion of Argument Regarding Damages. Defendant made the Motion in writing at the conclusion of Plaintiffs' case-in-chief on February 19, 2018. For the following reasons, the Court denies the Motion.

I. DISCUSSION

Federal Rule of Civil Procedure 50(a)(1) provides,

If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:

(A) resolve the issue against the party; and

(B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

In reviewing a Rule 50 Motion, the Court should review all of the evidence in the record.[1] However, all reasonable inferences are drawn in favor of the non-moving party and the

---

[1] *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

1

Court may "not make credibility determinations or weigh the evidence."[2] Judgment as a matter of law is appropriate "only if the evidence points but one way and is susceptible to no reasonable inferences which may support the opposing party's position."[3] A judgment as a matter of law is appropriate "if there is no legally sufficient evidentiary basis . . . with respect to a claim or defense . . . under the controlling law."[4]

A. *Infringement*

In this matter, Plaintiffs allege that Defendant infringed claims 1 and 5 of the '888 patent. Plaintiffs must prove by a preponderance of the evidence that Defendant sold or offered for sale a product that meets all the requirements of the claims and did so without the permission of Plaintiffs during the time the patent was in force.[5]

Claim 1 of the '888 patent is an independent claim that covers:

A crystal-free coenzyme Q10 composition comprising: non-crystalline coenzyme Q10 present in an amount of 5.3% by weight to about 12% by weight based on the total weight of the composition; a solvent selected from the group consisting of conjugated linoleic acid, ethyl ester marine lipids, citrus oils, and combinations thereof; and a carrier oil.

Claim 5 of the '888 patent is dependent on claim 1 and adds the following requirement: "The composition in accordance with claim 1 wherein the solvent comprises conjugated linoleic acid."

---

[2] *Id.*

[3] *Finley v. United States*, 82 F.3d 966, 968 (10th Cir. 1996) (quoting *Q.E.R., Inc. v. Hickerson*, 880 F.2d 1178, 1180 (10th Cir. 1989)).

[4] *Baty v. Willamette Indus., Inc.*, 172 F.3d 1232, 1241 (10th Cir. 1999) (quoting *Harolds Stores, Inc. v. Dillard Dep't Stores*, 82 F.3d 1533, 1546–47 (10th Cir. 1996)).

[5] *See MicroStrategy Inc. v. Bus. Objects, S.A.*, 429 F.3d 1344, 1352–53 (Fed. Cir. 2005) (holding that there was no literal infringement where the accused product did not contain every element of the claim); *Cross Med. Prods. v. Medtronic Sofamor Danek*, 424 F.3d 1293, 1309–11 (Fed. Cir. 2005) (holding that there was no direct infringement where accused product did not include each claim limitation); *Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261, 1269–73 (Fed. Cir. 1986) (affirming finding of direct infringement based on circumstantial evidence).

Drawing all reasonable inferences in favor of Plaintiffs as the non-moving party, the Court finds that Plaintiffs provided sufficient evidence for a reasonable jury to find that Defendant infringed both claim 1 and claim 5 of the '888 patent. First, Dr. Ed Brothers testified that he examined the accused products under a light microscope at 640X magnification and was unable to see anything that he could definitively state was a CoQ10 crystal. This satisfies the crystal free or, "non-crystalline requirement."

Regarding other ingredients in the accused products, Dr. Abato testified that CoQ10 was present in a weight of approximately 6.89%, which fell within the range provided by claim 1. He also testified that conjugated linoleic acid ("CLA") was used as a solvent in the accused products, and the accused products contained avocado oil which acted as a carrier oil.

Defendant argues that Dr. Prestwich's testimony that he did see crystals using polarized light provides uncontroverted evidence that crystals are visible and no reasonable jury could conclude that Xymogen is infringing. This argument fails, however, as the Court must draw all inferences in favor of the non-moving party, and may not weight the evidence.

Defendant also argues that allowing the jury to consider both the testimony of Dr. Brothers and Dr. Prestwich will lead to the jury choosing one valid scientific technique over the other and thus impermissibly overruling claim construction as claim construction allows for both. However, the jury may weigh the credibility of the two experts and the techniques they used and find that one is more reliable without finding that one is not a valid technique.

Therefore, in consideration of the evidence provided in Plaintiffs' case-in-chief, a reasonable jury could conclude that the accused products meet every requirement listed in claim 1 and claim 5 of the '888 patent and are infringing both claims.

B. *Damages*

Plaintiffs also seek a reasonable royalty as damages in this case. In patent cases, there is a "presumption of damages when infringement is proven"[6] as the statute clearly states that "[u]pon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, *but in no event less than a reasonable royalty* for the use made of the invention by the infringer . . . ."[7] "[S]ection 284 is clear that expert testimony is not necessary to the award of damages, but rather may be received as an aid,"[8] and, Plaintiffs are not required to put on evidence in order to be awarded royalty damages.[9]

While there is not a comprehensive list of all the factors that can go into determining what a reasonable royalty may be in each case, the following may be considered:

> 1. The royalties received by the patentee for the licensing of the patent in suit, proving or tending to prove an established royalty;
> 2. The rates paid by the licensee for the use of other patents comparable to the patent in suit;

---

[6] *Dow Chem. Co. v. Mee Indus., Inc.*, 341 F.3d 1370, 1382 (Fed. Cir. 2003) ("The district court's conclusion that no damages could be awarded, in light of the presumption of damages when infringement is proven, was in error."); *Lindemann Maschinenfabrik GmbH v. Am. Hoist & Derrick Co.*, 895 F.2d 1403, 1406 (Fed. Cir. 1990) ("In patent law, the fact of infringement establishes the fact of damage because the patentee's right to exclude has been violated.").

[7] 35 U.S.C. § 284 (emphasis added).

[8] *Dow Chem. Co.*, 341 F.3d at 1381–82 (internal quotation marks omitted); *see also* 35 U.S.C. § 284 ("The court may receive expert testimony as an aid to the determination of damages or of what royalty would be reasonable under the circumstances.").

[9] *Info-Hold, Inc. v. Muzak LLC*, 783 F.3d 1365, 1372 ("35 U.S.C. § 284 requires the district court to award damages in an amount no less than a reasonable royalty even if the plaintiff[s have] no evidence to proffer. We explained that, in such a case, the district court should consider the *Georgia–Pacific* factors in detail, and award such reasonable royalties as the record evidence will support.") (internal quotation marks omitted); *see also Dow Chem. Co.*, 341 F.3d at 1382 (holding that the "court's obligation to award some amount of damages does not mean that a patentee who puts on little or no satisfactory evidence of a reasonable royalty can successfully appeal on the ground that the amount awarded by the court is not 'reasonable' and therefore contravenes section 284"); *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1327 (Fed. Cir. 2014) ("If a patentee's evidence fails to support its specific royalty estimate, the fact finder is still required to determine what royalty is supported by the record.").

3. The nature and scope of the license, as exclusive or non-exclusive; or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold;
4. The licensor's established policy and marketing program to maintain his patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly;
5. The commercial relationship between the licensor and licensee, such as, whether they are competitors in the same territory in the same line of business; or whether they are inventor and promoter;
6. The effect of selling the patented specialty in promoting sales of other products of the licensee; that existing value of the invention to the licensor as a generator of sales of his non-patented items; and the extent of such derivative or convoyed sales;
7. The duration of the patent and the term of the license;
8. The established profitability of the product made under the patent; its commercial success; and its current popularity;
9. The utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results;
10. The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention;
11. The extent to which the infringer has made use of the invention; and any evidence probative of the value of that use;
12. The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions;
13. The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer;
14. The opinion testimony of qualified experts; [and]
15. The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee— who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention— would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.[10]

Plaintiffs provided evidence that is covered by several of these factors. According to testimony, the products sold by Thorne and Xymogen are superior to all other products in the

---

[10] *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).

market and the sale of the highly absorbable CoQ10 product is profitable. Due to this "superior" product, by signing an exclusivity agreement with Best Formulators, Thorne was set to be the only player in the market and sought to gain clients from Xymogen. There was also testimony that the initial payment for this seven-year exclusivity agreement was $1,000,000 and included regular royalty payments with set sales quotas and minimum royalty payments of approximately six percent. Mr. Steele and Dr. Judy were also receiving royalty payments for being named inventors on the patent.

Additionally, Mr. McCamy, President of Thorne, testified that a hypothetical sub-license to Xymogen, at a minimum, would match Thorne's agreement with Best Formulators. Mr. McCamy also testified that Thorne missed out on around four to five million dollars from 2013 to present and the sale of the Q-Best product decreased once Xymogen began competing with Thorne in the marketplace. Finally, Mr. Nelson provided sales data from both Thorne and Xymogen for the relevant years and testified that Thorne had talked to the Mayo Clinic about further tests and studies that could increase the product's profitability.

Despite this evidence, Defendant argues that no evidence on damages was provided. This argument, however, is unfounded as multiple witnesses touched on a number of the *Georgia-Pacific* factors that the jury may use in determining a reasonable royalty.

Therefore, even though no evidence is required from Plaintiffs, the Court finds that they have produced sufficient evidence for a reasonable jury to determine what a reasonable royalty should be.

## II. CONCLUSION

It is therefore

ORDERED that Defendant's Motion for Judgment as a Matter of Law and Preclusion of Argument Regarding Damages (Docket No. 368) is DENIED.

DATED this 28th day of February, 2018.

BY THE COURT:

_____
Judge Ted Stewart